Nazario CASTANEDA–GONZALEZ,
Petitioner

v.

IMMIGRATION AND
NATURALIZATION
SERVICE.

No. 75–1580.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 12, 1976.

Decided May 27, 1977.

**420**

James J. Hines, Falls Church, Va., for petitioner.

Richard I. Chaifetz, Atty., Dept. of Justice, Washington, D. C., with whom B. Franklin Taylor, Jr., Acting Chief, Government Regulations Section, Criminal Division, Washington, D. C., was on the brief, for respondent.

Before BAZELON, Chief Judge, and TAMM and ROBB, Circuit Judges.

Opinion for the court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge:

Petitioner Nazario Castaneda-Gonzalez, an alien immigrant, seeks review of the decision of the Board of Immigration Appeals that he is deportable because the la-

bor certificate on which he relied at the time of his entry into the United States was based on a material misrepresentation.[1] He argues that the immigration laws do not permit the deportation of an alien whose labor certificate is based on incorrect facts unless it is shown that the misrepresentation was willful as well as material. We agree, and because the record before us does not support a finding of willfulness, we cannot affirm the Board of Immigration Appeal's decision. Since the question of willfulness was not addressed in the administrative proceedings because of the Board's erroneous interpretation of the statute, however, we remand this case to the Board for exploration of that issue.

## I. STATUTORY FRAMEWORK

Subsection 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1) (1970), empowers the Attorney General, who has delegated his authority to the Commissioner of the Immigration and Naturalization Service[2] and the Board of Immigration Appeals,[3] to deport any alien who was excludable at the time of his entry into the United States. Section 212 of the Act specifies those aliens who are excludable and at the time Castaneda-Gonzalez entered this country included among its thirty-one enumerated excludable classes

[a]liens seeking to enter the United States for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and

---

**1.** Section 106 of the Immigration and Nationality Act grants us jurisdiction to review all final orders of deportation. 8 U.S.C. § 1105a (1970).

**2.** 8 C.F.R. § 2.1 (1977).

**3.** *Id.* § 3.1.

working conditions of the workers in the United States similarly employed.[4]

Immigration & Nationality Act, § 212(a)(14), 8 U.S.C. § 1182(a)(14) (1970). The certification referred to in subsection 212(a)(14) is popularly termed a "labor certificate," and the rules governing the application for and approval of a labor certificate have been set out in regulations of the Secretary of Labor.[5] In order to reduce the delay in processing requests the Secretary has published lists of employment categories for which he has made a general determination, apart from any particular individual application, that the substantive requirements of subsections 212(a)(14)(A) and (B) are or are not met. Schedule A lists those categories for which the requirements are met and Schedule B those for which they are not. If an alien seeks certification for a job which is not included in either Schedule A or B, the Secretary makes an individual determination, on the basis of information submitted by the alien and his prospective employer,[6] whether there are sufficient willing and qualified American

workers available and whether employment of the alien will adversely affect the wages and working conditions of Americans similarly employed.

## II. HISTORY OF THE CASE

In March 1970, Castaneda-Gonzalez applied for and was issued a labor certificate for employment as a Specialty Cook of foreign foods at the Golden Table Restaurant in Washington, D. C. "Cook" was not listed on either Schedule A or B at that time,[7] and the relevant regulations covering individual certification requests required one form describing the alien's qualifications and another describing his prospective employment in the United States.[8] Except for general descriptive information, Castaneda-Gonzalez's "Statement of Qualifications of Alien" form simply indicated that he had worked as a cook at the Pan American Restaurant in the airport terminal of Guatemala City from 1959 until July 1969. Administrative Record at 68. The complete description of the work performed at this job was "preparation of all Spanish type foods." *Id.*[9] His

---

4. In October 1976, subsection 212(a)(14) was amended to make the labor certification requirement applicable equally to Western and Eastern hemisphere immigrants and to require the *Secretary of Labor to determine that* "equally qualified" American workers are available in order to deny a labor certification to a member of the teaching profession or an individual with exceptional ability in the arts or sciences. Immigration & Nationality Act Amendments of 1976, Pub.L. No. 94–571, §§ 5, 7(d), 90 Stat. 2703. *See generally* H.R.Rep. No. 94–1553, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin.News 1976, p. 6073. These changes have no direct impact on the issues raised by this petition for review.

5. The regulations which were in force at the time Castaneda-Gonzalez applied for and was issued his labor certificate are set forth in 29 C.F.R. § 60 (1976). The Secretary has recently amended his regulations and redesignated them as 20 C.F.R. § 656, *published in* 42 Fed.Reg. 3440 (Jan. 18, 1977).

6. *To apply for* a labor certificate on the basis of a category of employment not listed on Schedules A or B, regulation 60.3(c) required Castaneda-Gonzalez to have his prospective employer submit a "Statement of Qualifications of Alien" form and a "Job Offer for Alien Employment" form with the local employment service

for the District of Columbia. 29 C.F.R. § 60.-3(c) (1976). After reviewing area labor market information pertaining to the statutory criteria, the local employment service forwarded that *information and his forms to the regional office* of the Department of Labor for a certification decision. *Id. See also id.* § 60.4 (designation of initial decisionmaker and procedures for administrative review of denial of certification).

The recent amendments of the regulations have added considerable detail to the information which must be supplied in an application for a labor certificate to assure the Secretary that the requirements of subsection 212(a)(14) are *in fact satisfied. See* 20 C.F.R. § 656.21, *published in* 42 Fed.Reg. at 3445.

7. In March of 1970, Schedule B did include "Cooks' Helpers" which was described as work requiring a variety of routine tasks to assist workers engaged in preparing food such as cleaning and cutting food, weighing and measuring ingredients, and carrying and distributing and cleaning equipment. 29 C.F.R. § 60, Schedule B (1970).

8. *See* note 6 *supra.*

9. The "Statement of Qualifications" form was filled out in English and signed by Castaneda-Gonzalez. He apparently does not read or

prospective employer was equally laconic on the "Job Offer for Alien Employment" form, describing the duties of the job offered as "preparation of Spanish dishes, such as paella, arroz con pollo" and stating the requirements as "3 yrs. experience as a cook" and "good health." *Id.* at 67. Despite the paucity of data, the Labor Department approved Castaneda-Gonzalez's request for certification on March 23, 1970, only three weeks after it was received.

Twenty-one months later, in December 1971, Castaneda-Gonzalez was admitted to the United States as an immigrant on the basis of the Secretary of Labor's certification of his prospective employment as a Specialty Cook at the Golden Table Restaurant. He immediately reported to work, but his employer was unsatisfied with his skills and told him that he would not continue to employ him as a cook. Castaneda-Gonzalez remained at the Golden Table for a short while as a dishwasher. After leaving that position he worked as a potwasher in one of the restaurants of the Kennedy Center for the Performing Arts and later as a kitchen handyman at the El Tio Pepe restaurant.

On January 9, 1974, two years after his entry into this country, the Immigration and Naturalization Service issued Castaneda-Gonzalez an order to show cause why he should not be deported. The Service charged that he was excludable at the time of his entry as an alien seeking to perform labor without the required certification from the Secretary of Labor. J.A. at 1–2. A hearing was held before an Immigration Judge who found in favor of the Service and ordered Castaneda-Gonzalez deported. The Board of Immigration Appeals affirmed that order on the basis of its own determination that Castaneda-Gonzalez was not qualified for the position for which the Secretary of Labor had certified him and its conclusion that because of this he could be treated as if he had had no labor certificate at all at the time of his entry.

Castaneda-Gonzalez now urges us to reverse the decision of the Board of Immigration Appeals. He argues that the Immigration and Nationality Act does not give the Attorney General and his delegates the power to review independently the facts surrounding the issuance of a labor certificate and to declare that the Secretary of Labor's certification had no effect. Under his construction of the statute, whenever the Service seeks to deport an immigrant because of inaccuracies in the factual basis of his labor certification, it must proceed under subsection 212(a)(19) of the Act which requires proof of fraud or willful misrepresentation of a material fact.[10]

### III. STATUTORY AUTHORITY OF THE ATTORNEY GENERAL

■ The Board of Immigration Appeals rejected Castaneda-Gonzalez's interpretation of the statute. According to the Board, section 103(a) of the Act, which defines the powers and duties of the Attorney General under the immigration laws, grants him the authority to invalidate a labor certificate issued by the Secretary of Labor. Section 103(a) provides:

The Attorney General shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, . . . [and decisions] by the Attorney General with respect to all questions of law shall be controlling.

8 U.S.C. § 1103(a) (1970). The findings required by subsection 212(a)(14) as to the

---

write English, however, *see* Administrative Record at 63, item 31, and testified at his deportation hearing that he asked a friend to help him fill out his application. *Id.* at 50–51.

10. Subsection 212(a)(19) provides that the classes of aliens to be excluded from entry include

[any] alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation . . . by fraud, or by willfully misrepresenting a material fact. 8 U.S.C. § 1182(a)(19) (1970). Thus, under its section 241(a) authority to deport any alien who was excludable at the time of his entry, the Service can deport an alien who obtained a labor certificate from the Secretary of Labor on the basis of a willful and material misrepresentation.

available supply of American workers and the impact on wages and working conditions within the United States may not be strictly questions of adjudicative fact, but they are hardly questions of law. If section 103(a) is a source of authority for the Board to invalidate the Secretary of Labor's determination of those issues, it must arise from that section's general grant of power to administer and enforce all immigration laws. The Service urges us to adopt just such a construction. It first notes that the Secretary of Labor is not included within the explicit exception clause of section 103(a) [11] and then argues that if Congress had intended to except the Secretary's labor certificate determination from review by the Attorney General it would have included him within that clause. Although it would facilitate our decision, we cannot accept the proposition that any determination of fact not explicitly exempted by section 103(a) is necessarily subject to review by the Attorney General. To do so would be to fall prey to circular reasoning, for that proposition assumes that section 103(a)'s affirmative grant of authority to the Attorney General includes the power to decide whether the substantive requirements of subsection 212(a)(14) are satisfied in any given factual situation which is the precise issue we must decide in this case. If the affirmative grant of section 103(a) is not so inclusive, then, regardless of whether the Secretary of Labor's labor certification authority is mentioned in the exception clause of that section, the Board's deportation order exceeded its statutory authority.[12]

Section 103(a) is a broad grant of general administrative and enforcement authority to the Attorney General. Subsection 212(a)(14) is a narrowly drawn provision which focuses particularly and precisely on the admission of aliens seeking to take up employment in the United States. It specifically provides that such aliens are excludable "unless the Secretary of Labor has determined and certified . . . to the Attorney General" that there are not sufficient American workers available and that employment of the alien seeking entry will not adversely affect wages and working conditions in the United States. This language clearly delegates the determination of whether the factual circumstances underlying any particular application for certification satisfy the substantive requirements of subsection 212(a)(14) to the Secretary of Labor and not to the Attorney General. Under the frequently-applied maxim of statutory construction that a specific provision prevails over a more general one,[13] we do not think that the general language of section 103(a) should be construed as delegating an authority to the Attorney General which is delegated only to the Secretary of Labor by subsection 212(a)(14).

The opinion of the Board of Immigration Appeals states that the legislative history of subsection 212(a)(14) is consistent with its decision that the Attorney General is statutorily empowered to declare a labor certificate issued by the Secretary of Labor invalid. The only authority cited for this

11. Section 103(a) excepts "the powers, functions, and duties conferred upon the President, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers" from its general delegation of administration and enforcement powers to the Attorney General. 8 U.S.C. § 1103(a) (1970).

12. Section 106 of the Act, 8 U.S.C. § 1105a (1970), expressly provides for judicial review of deportation orders under the "procedure prescribed by . . . sections 1031 to 1042 of Title 5"; these provisions have since been recodified at sections 2341 to 2352 of title 28. Even before the enactment of this statutory review provision, courts have not hesitated to set aside deportation orders based on erroneous inter-

pretations of the immigration laws. *E. g., Barber v. Gonzales,* 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009 (1954) (meaning of "entry" within § 19(a) of Immigration Act of 1917); *Fong Haw Tan v. Phelan,* 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433 (1948) (meaning of "sentenced more that once" within § 19(a)); *see* C. Gordon & H. Rosenfield, Immigration Law and Procedure § 8.12a (1976).

13. *See D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932); *FTC v. Manager, Retail Credit Co.,* 169 U.S. App.D.C. 271, 276, 515 F.2d 988, 993 (1975); *Thielebeule v. M/S Nordsee Pilot,* 452 F.2d 1230, 1232 (2d Cir. 1971).

sweeping assertion is a statement by Congressman Moore during floor debate of an amendment to another section of the Act, section 214(c), in which he obliquely refers to subsection 212(a)(14) in commenting that sections other than 214(c) contain adequate safeguards for American workers.[14]

Section 214(c) deals with nonimmigrant aliens while 212(a)(14) deals with immigrants. Moreover, section 214(c) expressly provides that "[t]he question of importing any alien as a nonimmigrant [temporary laborer] shall be determined by the Attorney General . . . ." 8 U.S.C. § 1184(c) (1970). Congressman Moore was objecting to an amendment to this language to make section 214(c) read: "shall be determined by the Attorney General, subject to the approval of the Secretary of Labor . . ." See 111 Cong.Rec. 21,805 (1965). He accurately characterized the effect of this change as granting the Secretary of Labor a veto over the Attorney General's power to decide whether a nonimmigrant laborer met the substantive statutory requirements for admission as a temporary laborer. The division of administrative authority between the Secretary of Labor and the Attorney General effected by that language is totally distinct from the allocation effected by subsection 212(a)(14)'s directive that immigrant alien laborers are excludable "unless the Secretary of Labor has determined and certified to the . . . Attorney General" that the substantive requirements of the

statute are satisfied. 8 U.S.C. § 212(a)(14) (1970).

■ Statements by individual legislators should generally be given little weight when searching for the intent of the entire legislative body. See National Welfare Rights Organization v. Mathews, 174 U.S. App.D.C. 410, 415–416, 533 F.2d 637, 642–43 (1976). See generally 2A Sutherland, Statutes and Statutory Construction § 48.13 (C. Sands ed. 1973). This caveat applies with added force where, as here, the statement relied on was made during debate of a different statutory provision that addresses a different legislative concern in language which on its face obviously contemplates a different division of administrative authority. We cannot accept the legislative history cited by the Board and the Service as any support whatsoever for their claim of implied authority from subsection 212(a)(14) to declare labor certificates of the Secretary of Labor invalid.

■ The Attorney General has broad power to inquire into the admissibility[15] and deportability[16] of aliens. This includes the authority to decide whether they are within one of the 31 excludable classes of section 212(a), but insofar as 212(a)(14) is concerned the Attorney General's inquiry is limited to whether the Secretary of Labor has determined that the substantive requirements of that subsection are satisfied. Once an alien shows that the Secretary of Labor has made such a determination[17] in

14. See 111 Cong.Rec. 21,805 (1965). The Service also has relied on Congressman Moore's remarks as the sole support for its argument that the legislative history of subsection 212(a)(14) indicates that Congress only intended to give the Secretary of Labor a veto power over the admission of an alien seeking entry for the purpose of performing labor and not power to control whether he should be admitted. Although, as pointed out in the text, Congressman Moore's remarks bear little relevance to the legislative intent underlying 212(a)(14), it is worth noting that our construction of that subsection does not give the Secretary of Labor power to control the admission of an immigrant laborer. We do reject an interpretation of his authority as simply a veto power and hold that an alien who has a labor certificate which has not been invalidated by the Secretary of Labor may not be deported as an alien

excludable under subsection 212(a)(14). We do not prohibit the Attorney General from deporting such an alien because he was excludable under any other subsection of 212(a), including 212(a)(19), which would include an alien who obtained a labor certificate on the basis of a material and willful misrepresentation.

15. See Immigration & Nationality Act, §§ 231–240, 8 U.S.C. §§ 1221–1230 (1970).

16. See id. §§ 241–250, 8 U.S.C. §§ 1251–1260 (1970) (amended 1976).

17. In considering what determination the Secretary of Labor has made, the Attorney General is of course free to consider not only the labor certificate submitted by an alien but also regu-

his favor, the statutorily delegated enforcement power of the Attorney General is exhausted. There is nothing in subsection 212(a)(14) itself that permits the Attorney General to ignore the Secretary's determination because he finds it factually defective and to decide for himself that under the correct facts a labor certificate should not have been granted. Subsection 212(a)(14) delegates that substantive determination only to the Secretary of Labor and simply directs the Attorney General to ensure that the Secretary has certified the alien. An alien so certified is not excludable under 212(a)(14).

 Our holding that the substantive certification decision under subsection 212(a)(14) lies exclusively with the Secretary of Labor does not bar the Service from seeking to deport an alien on the basis of inaccuracies in the factual basis of a labor certificate. Subsection 212(a)(19) provides that an alien is excludable, and therefore deportable under 241(a)(1), if he "has procured a visa or other documentation . . by fraud, or by willfully misrepresenting a material fact." 8 U.S.C. § 1182(a)(19) (1970). The Service complains that if aliens admitted with labor certificates based on incorrect facts may only be deported under subsection 212(a)(19), then, where a misrepresentation is not willful, "the Attorney General will be prevented from deporting [an alien] even though if the true facts had been known the labor certificate would never have been issued." Brief for Respondent at 14. We agree that this correctly states the consequences of requiring willfulness as well as materiality under subsection 212(a)(19), but we do not see that it is a reason to read subsection 212(a)(14) as authorizing the Attorney General to deport an alien with a labor certificate based on material but not willful misrepresentations. Congress explicitly chose to require the

government to prove willfulness when seeking to deport an alien for misrepresenting facts in applying for entry documents, and we will not construe subsection 212(a)(14) so as to allow the Service to circumvent this congressionally-imposed burden of proof with respect to labor certificates.

 As another source of statutory authority to reject the labor certification of the Secretary of Labor, the Service relies on section 221(h) of the Immigration and Nationality Act which provides that "[n]othing in this chapter shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to enter the United States, if, upon arrival . . . he is found to be inadmissible . . . ." 8 U.S.C. § 1201(h) (1970). Under this provision the administrative authorities charged with determining the admissibility of aliens at ports of entry have long asserted the power to reexamine the factual basis of the admissibility determinations on which an alien's visa was issued and to refuse to admit any alien whom they find excludable, despite a contrary conclusion of the visaing official. *See Vitale v. Immigration and Naturalization Service,* 463 F.2d 579, 580 (7th Cir. 1972); *Hermina Sague v. United States,* 416 F.Supp. 217, 218–19 (D.P.R. 1976); *United States ex rel. Katnic v. Reimer,* 25 F.Supp. 925, 926 (S.D.N.Y.1938), *aff'd,* 104 F.2d 1022 (2d Cir. 1939); *cf. Ng Yip Yee v. Barber,* 210 F.2d 613, 613–14 (9th Cir.), *cert. denied,* 347 U.S. 988, 74 S.Ct. 850, 98 L.Ed. 1122 (1954); *United States ex rel. Strachey v. Reimer,* 101 F.2d 267, 269 (2d Cir. 1939). The Service argues that the phrase "other documentation" makes section 221(h) applicable to labor certificates and, characterizing the Secretary of Labor's determination under subsection 212(a)(14) as merely an "initial ruling," urges us to accept the Board of Immigration Appeals'

---

lations of the Secretary in effect at the time of entry limiting or conditioning labor certificates and their application to the facts as they exist at the time of entry. Thus, in the present case, the Service could have recognized that the Secretary of Labor had invalidated Castaneda-Gonzalez's labor certificate if the Secretary could not have granted a labor certificate under

the facts as they existed at the time of Castaneda-Gonzalez's entry. *See* Part IV B *infra.* Since we cannot say that the Secretary could not have issued a labor certificate under those facts, *see* note 34 *infra* and accompanying text, the Service was required to find that the Secretary of Labor had made a subsection 212(a)(14) determination in favor of Castaneda-Gonzalez.

conclusion that there is no distinction between a visa and a labor certificate.

Certainly section 221(h) applies to labor certificates, but contrary to the Service's position, the statutory relationship between the Secretary of Labor's authority to issue labor certificates and the Attorney General's authority to determine admissibility at the point of entry is much different than the relationship between the authority of consular officers to issue visas and the Attorney General's final decision on admissibility.

Section 211(a) of the Immigration and Nationality Act provides that as a general rule "no immigrant shall be admitted into the United States unless . . . he has a valid unexpired immigrant visa . . . ." 8 U.S.C. § 1181(a) (1970). Section 221 of the Act delegates the authority to issue visas to consular offices [18] and directs them not to issue visas to any alien who falls within one of the excludable classes described in section 212(a). 8 U.S.C. §§ 1201(a), (g) (1970); see, id. § 1182(a). Thus, as an absolute precondition to admission, an alien must submit his proof that he is not excludable to a preliminary screening by a consular officer.[19] Immigration & Nationality Act § 222, 8 U.S.C. § 1202 (1970); 22 C.F.R. §§ 42.90–.91, and 42.111 (1976). Acceptance of his claim by a consular officer does not guarantee admission to an alien, however, since sections 235–236 of the Act, 8 U.S.C. §§ 1225–1226 (1970), direct the Service to inspect each alien applying for admission at a port of entry to determine whether he or she is excludable. In making that determination the Service must decide the same questions of excludability the consular officer decided when issuing a visa to the alien applicant. For example, both the consular officer and the Service must decide whether an alien is excludable as a drug addict or chronic alcoholic, 212(a)(5), as one who has been convicted of a crime involving moral turpitude, 212(a)(9), as a prostitute, 212(a)(12), or as one likely to become a public charge, 212(a)(15). 8 U.S.C. §§ 1182(a)(5), (9), (12), (15) (1970). The decision of the consular officer that an alien is not within one of the excludable classes of section 212(a) is not binding on the Service because of section 221(h). It serves simply as a preliminary investigation, and a favorable decision does no more than entitle an alien to present himself at a port of entry to prove his admissibility before the Service. See Reimer, supra at 269; Hermina Sague, supra at 218–19. If the port-of-entry inspection of an alien's qualifications raises any doubts as to his admissibility, section 236(a) of the Act directs the Service to conduct an evidentiary proceeding before one of its special inquiry officers who renders a final decision on the matter.[20] 8 U.S.C. § 1226(a) (1970); 8 C.F.R. § 236 (1976).

This "double check" system, which requires an alien to demonstrate his admissibility before two different administrative officials with independent and coequal au-

---

**18.** "Consular officer" is defined by the statute as any consular, diplomatic, or other officer of the United States designated to issue immigrant or nonimmigrant visas. Immigration & Nationality Act, § 101(a)(9), 8 U.S.C. § 1101(a)(9) (1970). The Secretary of State is expressly denied the authority to review visa decisions of consular officers. The statute does provide for a Visa Office within the Department of State, however, which seeks to secure uniform interpretation of the immigration laws through issuing advisory opinions to consular officers and maintaining liaison with the INS. Id. § 104, 8 U.S.C. § 1104 (1970); see C. Gordon & H. Rosenfield, supra note 12, §§ 1.11–.12b.

**19.** The visa decisions of consular officers are not subject to direct review by the Service since the exception clause of section 103(a) expressly denies the Attorney General any authority over the immigration duties and functions of consular officers. 8 U.S.C. § 1103(a) (1970).

**20.** In general the decision of a special inquiry officer may be appealed to the Board of Immigration Appeals by either the applicant alien or the district director of the Service. 8 C.F.R. § 236.5 (1976); see id. §§ 3.1–.8 (procedures before Board of Immigration Appeals). The decision of the Board is final except in those cases where the Attorney General directs that the case be referred to him or where the Chairman of the Board, a majority of the Board, or the Commissioner of the INS requests that the case be referred to the Attorney General. Compare id. § 3.1(d)(2) with id. § 3.1(h)(1).

thority, has not gone uncriticized.[21] Nevertheless, despite its duplication and potential for confusion, Congress apparently has decided that its benefits outweigh its costs, and has continued the statutory framework which requires consular officers and the Attorney General independently to address the same issues in different contexts.[22]

The statutory relationship between the Secretary of Labor and the Attorney General with respect to labor certificates is wholly dissimilar to the system of bifurcated authority between consular officers and the Attorney General under which visas are issued and between the Secretary of State and the Attorney General with respect to determination of nationality.[23] Subsection 212(a)(14) clearly delegates to the Secretary of Labor the power to determine the availability of American workers and the impact on wages or working conditions when an alien applies for a labor certificate. The statutory language defines its excludable class as all those aliens without the Secretary of Labor's certification that there are no domestic workers available and that there will be no adverse impact on wages and conditions. It does not first define the class as all aliens seeking entry to accept employment for which American workers are available or whose admission would have an adverse impact on wages or working conditions and then provide the certification process as a prescreening device or enforcement aid.

In the context of nonimmigrant alien labor, Congress has expressly given the Attorney General power to decide the substantive question of the availability of American workers.[24] This indicates that

21. *See* Report of the United States Commission on Government Security 573–78 (1957); President's Commission on Immigration and Naturalization, Whom Shall We Welcome 134–35 (1953); Rosenfield, *Necessary Administrative Reforms in the Immigration and Nationality Act of 1952,* 27 Fordham L.Rev. 145, 145–51 (1958).

22. *See* S.Rep.No.1515, 81st Cong., 2d Sess. 332 (1950). The Special Subcommittee to Investigate Immigration and Naturalization rejected a proposal to centralize control over immigration by transferring the Visa Division of the Department of State to the Justice Department. *Id.* at 327, 332. The Subcommittee concluded that this bifurcation of authority creates worthwhile "additional barriers in the way of undesirable aliens" and that problems presented by the system could be solved by familiarizing consular officers with the rules applied by the Immigration and Naturalization Service. *Id.* at 332–33.

No legislation resulted immediately from the Subcommittee's report, but the next Congress drew upon its study in enacting a broad reform of the immigration and naturalization laws which did not change the "double check" system. *See* H.R.Rep.No.1365, 82d Cong., 2d Sess. 27 (1952), U.S.Code Cong. & Admin.News 1952, p. 1653.

23. The bifurcation of authority between consular officers and the Attorney General with respect to determinations of excludability under section 212(a) is the same as that between the Secretary of State and the Attorney General with respect to determinations of nationality. The Secretary of State has the authority to issue passports to "those owing allegiance, whether citizens or not, to the United States." 22 U.S.C. §§ 211–212 (1970). The allegiance required must be permanent allegiance, 26 Op. Atty.Gen. 376, 377 (1907), and since a "national of the United States" includes a person who "owes permanent allegiance to the United States," 8 U.S.C. § 1101(a)(22) (1970), the Secretary of State must necessarily decide whether an applicant for a passport is a national of the United States. *See Cartier v. Secretary of State,* 165 U.S.App.D.C. 130, 136, 506 F.2d 191, 197 n.4 (1974), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). The INS must also decide whether an individual applying for entry is a United States national since it can only exclude aliens, a term statutorily defined as persons who are not citizens or nationals of the United States. 8 U.S.C. § 1101(a)(3) (1970); *see, e. g., Ng Yip Yee v. Barber, supra* at 614; *In re Wing,* 124 F.Supp. 492, 494 (N.D.Cal.1954).

24. *Compare* Immigration & Nationality Act § 214(c), 8 U.S.C. § 1184(c) (1970), *with id.* § 101(a)(15)(H)(ii), 8 U.S.C. § 1101(a)(15)(H)(ii) (1970) (amended 1976). Similarly, within other subdivisions of section 212(a) itself there is clear evidence that where Congress intended two agencies to have co-equal authority to decide a particular substantive issue it provided so in explicit language. *See, e.g., id.* § 212(a)(15), 8 U.S.C. § 1182(a)(15) (1970) (aliens likely to become public charges in opinion of consular officer or Attorney General); *id.* § 212(a)(27), 8 U.S.C. § 1182(a)(27) (1970) (aliens who consular officer or Attorney General has reason to believe seek to engage in activity prejudicial to public interest).

Congress was not unaware of the issue of the proper allocation of administrative authority, and we think that the failure to expressly grant the Attorney General authority to make the same substantive decision in the context of immigrant alien laborers under subsection 212(a)(14) strongly implies that Congress intended to reserve that authority to the Secretary of Labor alone. Moreover, no other provision of the Immigration and Nationality Act directs the Attorney General to make the determinations which the Secretary of Labor must make under subsection 212(a)(14). Thus, unlike the admissibility decisions embodied in a visa decision of a consular officer or a nationality determination of the Secretary of State, the Attorney General is not called upon to make the same decisions in another context. The Secretary of Labor alone decides whether there are sufficient American workers to fill a particular job and whether an alien's entry to accept that job would adversely affect wages or working conditions. The function of the Attorney General and the consular officers [25] is simply to ensure that that determination has been

made by the Secretary of Labor in favor of an alien immigrant. If so, that alien is not excludable under subsection 212(a)(14), although he might be inadmissible or deportable for other reasons.

The Service also argues that this case is similar to the situation when an alien applies for a preference classification under section 203(a) on the basis that he or she is a member of a profession, has exceptional ability in the sciences or arts, or is capable of labor for which a shortage exists in the United States. *See* Immigration and Nationality Act §§ 203(a)(3), (6), 8 U.S.C. §§ 1153(a)(3), (6) (1970) (amended 1976). We acknowledge the factual similarity of such a situation to the one at bar [26] and the authority of the numerous cases cited by the Service for the proposition that the Attorney General may deny such preference requests without reference to the Secretary of Labor because he determines that the applicant alien does not qualify for the preference category relied on.[27] Those cases are not relevant to this case, however, for they address an entirely different legal

---

**25.** The Service has argued that we should approve the Board of Immigration Appeals' decision in this case because at the time Castaneda-Gonzalez applied for his visa the consular officer could have inquired into his qualifications and denied his visa request if the consul decided for himself that Castaneda-Gonzalez did not satisfy the requirements of subsection 212(a)(14). Although our holding that an alien who has been certified by the Secretary of Labor is not excludable under subsection 212(a)(14) is also applicable to visa decisions, a consular officer could make such a decision without fear of reversal since visa decisions are nonreviewable. *See Burrafato v. Department of State*, 523 F.2d 554, 556–57 (2d Cir. 1975), *cert. denied*, 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976); *Loza-Bedoya v. Immigration and Naturalization Service*, 410 F.2d 343, 347 (9th Cir. 1969). *But see also Kleindienst v. Mandel*, 408 U.S. 753, 770, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (when constitutional rights of American citizens are implicated, government may be required to show "facially legitimate and bona fide reason" for refusal of visa). The fact that an erroneous administrative interpretation of the law in one context is not correctable by the courts because it is unreviewable is no reason for the courts to adopt it as the governing standard for administrative action which is reviewable.

**26.** As a citizen of an independent country of the Western Hemisphere, Castaneda-Gonzalez was not subject to the preference system. *Compare* Immigration & Nationality Act § 203(a), 8 U.S.C. § 1153(a) (1970), *with id.* §§ 201(a), 101(a)(27)(A), 8 U.S.C. §§ 1151(a), 1101(a)(27)(A) (1970). The Immigration and Nationality Act Amendments of 1976 modified certain categories of this preference system and extended it to natives of the Western Hemisphere. 8 U.S.C.A. §§ 1101(a)(27)(A), 1151(a), 1153(a) (Supp.1976); *see* H.R.Rep.No. 1553, *supra* note 4, at 1, 7–8.

**27.** *See, e. g., Reyes v. Carter*, 441 F.2d 734 (9th Cir. 1971) (per curiam) (no abuse of discretion in determination that plaintiff did not qualify as accountant); *Song Jook Suh v. Rosenberg*, 437 F.2d 1098 (9th Cir. 1971) (no abuse of discretion in INS decision that instructor of cosmetology not a member of a profession); *Dong Yup Lee v. Immigration and Naturalization Service*, 407 F.2d 1110 (9th Cir. 1969) (no abuse of discretion in decision that alien admitted for temporary visit as musician of "distinguished merit" did not qualify as musician of "exceptional ability" for visa for permanent residence).

issue. Section 203(a) simply states the substantive standards for determining the preference priority category to which an immigrant alien should be assigned. There is no question that the statute authorizes the Attorney General to pass on a request for preference status, see Immigration and Nationality Act §§ 204(a), (b), 8 U.S.C. §§ 1154(a), (b) (1970), and the only issues addressed by the section 203(a) cases cited by the Service were the proper standard of judicial review of an exercise of that authority and whether the decision of the Attorney General satisfied that standard. In this case, however, we' must decide the distinct and more fundamental question of whether the Attorney General is statutorily authorized to ignore the labor certification of the Secretary of Labor based on his own substantive evaluation of the standards articulated in subsection 212(a)(14).

A comparison of the statutory provisions governing preference status decisions and subsection 212(a)(14) supports our holding that the Attorney General does not have legislatively delegated authority to review the basis for the Secretary of Labor's certification decision. With respect to petitions for preference status which require assessment of either an alien's qualifications for an occupation or the state of the labor supply in the United States, section 204(b) directs the Attorney General to "[consult] with the Secretary of Labor" but nonetheless clearly provides that the Attorney General, himself, shall determine whether an alien is eligible for a preference under section 203(a). Id., 8 U.S.C. § 1154(b) (1970). This is further evidence of congressional sensitivity to the interplay of administrative authority which permeates the immigration laws, and demonstrates that, where Congress sought to involve the Department of Labor simply as an enforcement aid to the Attorney General in areas of its expertise, the legislators did not rely on any implied power of the Attorney General but provided an unambiguous expression of their intent. Subsection 212(a)(14) does not refer to "consultation" with or "initial screening" by the Secretary of Labor with respect to substantive issues which it or any other section of the Act directs the Attorney General to decide. It simply states that immigrant aliens seeking entry to perform labor are to be excluded "unless the Secretary of Labor has determined and certified . . . ." 8 U.S.C. § 1182(a)(14) (1970). Congress did not provide, as it could have, that the Attorney General shall determine, after an initial decision by the Secretary of Labor, whether an immigrant alien laborer satisfies the substantive requirements of subsection 212(a)(14), and we will not impute such a gloss to its words in light of its express provision for such a result where it was intended in other areas of the immigration laws.

We now turn to the Service's claim that the authority of a special inquiry officer under section 236 "to determine whether an arriving alien . . . shall be allowed to enter or shall be excluded and deported" includes the power to review the merits of the Secretary of Labor's certification decision and declare a labor certificate invalid. We agree with the Service that this section authorizes it to exclude aliens who are not qualified under the immigration laws for entry into the United States. We do not agree, however, that it necessarily empowers the Service to declare that an alien who has received a labor certificate from the Secretary of Labor is nonetheless excludable under subsection 212(a)(14) because the Service concludes that he is not qualified for the employment covered by his certificate. The job qualifications of an alien laborer are matters to be considered by his prospective employer and the Secretary of Labor, insofar as they bear on his determination whether there are capable American workers available to fill the job. To avoid a finding of disqualification by the Service under subsection 212(a)(14) of the immigration laws, however, an alien need only show that the Secretary of Labor has determined that no American workers are available for the job he will accept and that his employment will not adversely affect wages or working conditions in the United States. An alien with a labor certificate indicating that such a determination has

been made is not disqualified for entry because the Service is dissatisfied with its factual basis or with the merits of the Secretary of Labor's decision.

## IV. DEPARTMENT OF LABOR REGULATIONS

Our holding that the Immigration and Nationality Act does not authorize the Attorney General to declare labor certificates of the Secretary of Labor invalid does not completely dispose of this case. The Service has argued in the alternative that regulations of the Secretary of Labor should be read as either delegating the power to review labor certification decisions to the Attorney General or "automatically self-invalidating" the certificate on which Castaneda-Gonzalez relied when he entered the United States.

At all times relevant to this case the Secretary of Labor has had in force some form of regulation purporting to limit the validity of labor certificates. At the time Castaneda-Gonzalez applied for and was issued his labor certificate those regulations provided that "[c]ertifications issued pursuant to this part are invalid if the representations upon which they are based are incorrect." 29 C.F.R. § 60.5 (1970). By the time he entered the United States in December 1971, that regulation had been amended to read:

> Certifications issued pursuant to this part are invalid if the representations upon which they are based are materially incorrect. Materially incorrect, for the purposes of this paragraph, means that if the correct facts had been known a certification could not have been issued pursuant to the requirements set forth at section 212(a)(14) . . . .

29 C.F.R. § 60.5(g) (1972). The same regulation was still in force when the Board of Immigration Appeals ordered Castaneda-Gonzalez deported and when the parties presented their arguments to this court. 29 C.F.R. § 60.5(g) (1976). Three weeks after oral argument, the Secretary of Labor published a notice of proposed rule-making with respect to his labor certification authority and, after considering comments from interested parties, adopted an entire new set of regulations for the labor certification process which became effective on February 18, 1977.[28] These new regulations replaced the standards of invalidity quoted above with a provision stating that

> [a]fter issuance labor certifications are subject to invalidation by the INS or by a Consul of the Department of State upon a determination : . . of fraud or willful misrepresentation of a material fact involving the labor certification application.

20 C.F.R. § 656.30(d), *published in* 42 Fed. Reg. 3449 (Jan. 18, 1977).

### A. *Delegation*

The currently effective Labor Department regulations unambiguously delegate the power to invalidate a labor certificate to the Service but limit that power to cases of fraud or willful misrepresentation of a material fact. As such, the delegation gives the Service no more practical power to deport an immigrant laborer than it already had since subsection 212(a)(19) permits the deportation or exclusion of an alien who has procured any document by fraud or willful misrepresentation of a material fact.

The regulation in force during 1974 when the Immigration Judge and the Board of Immigration Appeals declared Castaneda-Gonzalez's labor certificate invalid, which is the regulation we must look to if their decisions are to be upheld on a delegation theory, does not refer to any delegation whatsoever. It simply states the standard of invalidity—a labor certificate based on a misrepresentation is invalid if, had the correct facts been known, it could not have been issued. The decision whether to issue a labor certificate is statutorily assigned to the Secretary of Labor and may only be reversed if it is an abuse of his discretion. The "could not have been issued" standard sweeps in the entire breadth of this discre-

---

**28.** 42 Fed.Reg. 3440 (Jan. 18, 1977). The new regulations were designated 20 C.F.R. § 656, and 29 C.F.R. § 60, containing the old regulations, was deleted.

tion. We are reluctant to infer that it was intended to delegate the power to invalidate a labor certificate on the basis of a misrepresentation without a showing of willfulness, particularly since the Secretary explicitly included a requirement of willfulness when he did expressly delegate that power to the Service.

Even if we were to construe this regulation as authorizing the Service to invalidate labor certificates, we nonetheless would be required to measure the decision of the Board of Immigration Appeals against the standard of validity articulated in the regulation itself. Nowhere in the Board's opinion in this case or in the arguments of the INS before this court is it suggested that the Secretary of Labor "could not" have issued a labor certificate if he had been aware of the correct facts. Instead the Board and the INS rely on an assumed power to made a de novo determination that the substantive requirements of subsection 212(a)(14) are not met. Thus if we were to read the Department of Labor's regulation as a delegation, the Board's decision that Castaneda-Gonzalez's labor certificate was invalid could not be affirmed because it would exceed the scope of the authority delegated.

### B. *Automatic Self-Invalidation*

As a separate argument to support its authority to deport an immigrant upon proof that his application for a labor certificate contained misrepresentations, without regard to willfulness, the Service contends that the regulations of the Department of Labor automatically invalidate any certificate based on representations which are materially incorrect. In analyzing this argument we initially must determine which of the three different versions of the validity regulation applies to Castaneda-Gonzalez's certificate. The Service bases its action against Castaneda-Gonzalez on its authority to deport any alien who was excludable "at the time of entry." Immigration and Nationality Act § 241(a)(1), 8 U.S.C. § 1251(a)(1) (1970). Under that authorization the version of the Department of Labor regulation in force at the time Castaneda-Gonzalez entered the United States in December 1971 must be the standard we apply.

Unfortunately this version is the most ambiguous of the three. Although the first sentence expresses the standard as "materially incorrect," the second defines that term in a fashion at variance with the usual meaning imparted to it by the law. Typically, "materiality" is applied as an objective test of the significance of a fact to the transactions under consideration. Under that test a misrepresentation is generally deemed material if it is shown that the correct facts would have had a bearing on the action of a decisionmaker.[29] The Department of Labor regulation does not follow this form, however, since it does not define "materially incorrect" to mean that the Secretary of Labor would have attached importance to the correct facts in deciding whether to grant a labor certificate.[30] In order to avoid the

---

**29.** The term "materiality" has been given this meaning in the federal securities laws, the law of torts, and the law of contracts. *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 445, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Wheat v. Hall*, 535 F.2d 874, 876 (5th Cir. 1976); *Deaktor v. Fox Grocery Co.*, 475 F.2d 1112, 1115 (3d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86 (1973); *Kaplan v. Suher*, 254 Mass. 180, 150 N.E. 9 (1926); *Byrd v. Rautman*, 85 Md. 414, 36 A. 1099 (1897); *Saxby v. Southern Land Co.*, 109 Va. 196, 63 S.E. 423 (1909); W. Prosser, The Law of Torts § 108, at 718–19 (4th ed. 1971); Re-

statement (Second) of Contracts § 304, comment c (Tentative Draft No. 11, 1976). Within the immigration laws themselves a similar meaning has been given to statutory materiality requirements. *See Chaunt v. United States*, 364 U.S. 350, 354–55, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960); *Kassab v. Immigration and Naturalization Service, supra*, 6 Cir., 364 F.2d 806 at 807; C. Gordon & H. Rosenfield, *supra* note 12, § 4.7c at 4–57 to 4–60.

**30.** The failure to adopt the general meaning of "material" may have been the result of poor draftsmanship rather than conscious design. We have discovered no evidence of a contrary intent, however, and we do not think that we should simply ignore the words which the Sec-

semantic confusion which easily arises from the use of a term in a sense different from the meaning generally given to it,[31] we think it is best to restate the substance of the Secretary's regulation by directly substituting the language of his special definition of the term "materially incorrect" into the first sentence of the regulation. Thus we read the regulation to provide that a labor certificate based on inaccurate facts is invalid if the Secretary of Labor could not have granted it if he had known the correct facts. Since decisions of the Secretary under subsection 212(a)(14) may only be rejected if they are arbitrary and capricious,[32] this "could not have granted" standard is difficult to meet. To hold that Castaneda-Gonzalez's labor certificate was automatically self-invalidated under this regulation, we would have to conclude that it would have been an abuse of discretion for the Secretary to have issued his certificate on the basis of the correct facts. We do not believe that the administrative record before the Board of Immigration Appeals would support such a finding, and therefore we cannot approve the Board's deportation order on the grounds of its automatic self-invalidation theory.

The job offer on which Castaneda-Gonzalez's labor certificate was based described the duties of his prospective position as "preparation of Spanish dishes, such as paella, arrozo con pollo" and required "three years experience as a cook." Administrative Record at 67. Castaneda-Gonzalez's "Statement of Qualifications of Alien" form represented that his job as a cook in Guatemala involved the preparation of all Spanish type food, id. at 68, but at his deportation hearing he testified that in fact it only required preparation of steaks, hamburgers, and other sandwiches, id. at 44. He also testified, however, that he had not intentionally misrepresented the nature of his work on the qualifications form, which had been completed with the assistance of a friend,[33] id. at 50–51, and that he was able to prepare certain Spanish dishes including those named in the job offer form, id. at 46–47.

■ If we were called upon to make our own judgment on the basis of the correct facts, we might well conclude that Castaneda-Gonzalez should not have been granted a labor certificate. Furthermore, in view of previous labor certification decisions, we also might agree that the Secretary of Labor would not have granted a labor certification under these facts. If the Secretary did issue a labor certificate under such facts we could not hold that it would be an abuse of the discretion delegated to him by subsection 212(a)(14).[34]

■ We would reject the Secretary's certification as an abuse of discretion in situations where the facts clearly demonstrate, on their face, that one of the two requirements of subsection 212(a)(14) is not met.[35] If the Service proves that a labor

---

retary chose to adopt after notice and comment procedures.

31. Thus, the Service states in its brief that this regulation invalidates any labor certificate based on a materially incorrect representation and completely ignores the Secretary's special definition of that term within his regulation. Brief for Respondent at 12.

32. See Pesikoff v. Secretary of Labor, 163 U.S. App.D.C. 197, 204, 501 F.2d 757, 761 n. 5, cert. denied, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974), quoting Secretary of Labor v. Farino, 490 F.2d 885, 889–90 (7th Cir. 1973); accord, Ratnayake v. Mack, 499 F.2d 1207, 1210–11 (8th Cir. 1974). See also Naporano Metal & Iron Co. v. Secretary of Labor, 529 F.2d 537 (3d Cir. 1976).

33. See note 9 supra.

34. See Naporano Metal & Iron Co., supra at 541 (wage paid alien under collective bargaining agreement cannot "adversely affect" wages and conditions of American workers in absence of evidence impugning agreement); accord, Ozbirman v. Regional Manpower Administrator, 335 F.Supp. 467, 472 (S.D.N.Y.1971).

35. For an example of such a factual situation, see In re Gonzalez-Becerra, 13 I & N Dec. 387, 388 (1969) (application reflected salary at $1.50/hr., but actual agreement was for $3.00/hr.; Labor Department data showed that at higher wage local workers were available).

certificate was based on the misrepresentation of a fact, which if correctly stated would conclusively demonstrate an adverse impact on wages or working conditions or the availability of American workers, we would find that the Secretary of Labor "could not have granted" a certificate under the correct facts and hold that any certificate based on that misrepresentation invalid under the Secretary's regulation.

■■■■ We also must reject the INS's argument that Castaneda-Gonzalez's labor certificate was automatically invalidated because he did not in fact take up the specific job for which it had been issued. It is true that the Secretary of Labor has declared that the validity of a labor certificate is restricted to the particular job and geographic location set forth in the prospective employer's job offer form. 29 C.F.R. § 60.5(e)(3) (1976) (regulations in effect at time of Board of Immigration Appeals' decision); 20 C.F.R. § 656.30(c)(1), *published in* 42 Fed.Reg. 3449 (Jan. 18, 1977) (regulations currently in effect containing substantially same provision). Nevertheless, an alien who enters the United States with the good faith intention to accept his certified employment is not deportable simply because it turns out that the particular job is no longer available, *In re Klein*, 12 I & N Dec. 819 (1968), or his employer suggests he look elsewhere, *In re Cardosa*, 13 I & N Dec. 228 (1969), or even if he leaves the certified job after only a short time because of dissatisfaction with working conditions or wages, *In re Marcoux*, 12 I & N Dec. 827 (1968).[36]

In those cases where the Board of Immigration Appeals has ordered the deportation of an alien who moved from the job for which he was certified, it has either found outright fraud or at least concluded that the alien never really intended to take up the certified employment or was always aware that he could not perform the duties of that job. *E. g. In re Welcome*, 13 I & N Dec. 352 (1969) (at time of entry alien knew that certified job was no longer available); *In re Poulin*, 13 I & N Dec. 264 (1969) (at time of entry alien did not intend to remain at certified employment); *In re La Pietra*, 13 I & N Dec. 11 (1968) (alien was aware that she could not perform duties described in employer's request form). Although the record in this case tends to justify Castaneda-Gonzalez's first employer's decision not to retain him as a Specialty Cook, there has been no showing that Castaneda-Gonzalez did not consider himself qualified or that he applied for this job simply as a ruse to gain entry into the United States with no intention of pursuing it. Such a showing perhaps could be made, but it has not been. Indeed, throughout the proceedings below and in this court, Castaneda-Gonzalez has insisted that he is able and willing to accept employment as a Specialty Cook of Spanish food. In the absence of any evidence to the contrary we must assume that Castaneda-Gonzalez applied for his labor certificate and entered this country with the good faith intention to accept the employment on which his certificate was based. Given that assumption, he is not deportable simply because his employer decided he would not retain him as a Specialty Cook of Spanish food.

**36.** Before January 18, 1977, the Secretary's own regulations emphasized that "[t]he terms and conditions of the labor certification shall not be construed as preventing an immigrant properly admitted to the United States from subsequently changing his occupation," 29 C.F.R. § 60.5(f) (1976). Any other interpretation could raise serious constitutional issues as to the extent to which employment opportunities may be restricted on the basis of alienage. *See Sugarman v. Dougall*, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973) (state law barring aliens from permanent positions in state civil service violates equal protection clause of fourteenth amendment); *In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973) (state's exclusion of alien from practice of law violates equal protection of fourteenth amendment); C. Gordon & H. Rosenfield, *supra* note 12, § 1.34. *But cf. Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (5 year residency requirement for eligibility for Medicare benefits applied to aliens but not citizens is not invalid under fifth amendment due process clause). *See generally* Comment, *Aliens' Right to Work: State and Federal Discrimination*, 45 Fordham L.Rev. 835 (1977).

## 434

### V. WILLFULNESS NOT ESTABLISHED

■ Finally we must consider the Service's contention that the record in this case adequately establishes a willful misrepresentation by Castaneda-Gonzalez. In a deportation proceeding, the government must establish an alien's deportability by clear, convincing, and unequivocal evidence. *Woodby v. Immigration & Naturalization Service*, 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). The evidence in the administrative record bearing on the willfulness of the misrepresentations made by Castaneda-Gonzalez does not meet that burden.

■ The Government relies on the holding in *Kassab v. Immigration & Naturalization Service*, 364 F.2d 806, 807 (6th Cir. 1966), that subsection 212(a)(19) does not require proof that a challenged document would not have been issued under the true facts, but only that knowledge of those facts might have spurred further investigation which could have uncovered facts justifying refusal of the document. Whatever may be the merits of that holding, it is directed toward the materiality requirement of subsection 212(a)(19) and not the separate and independent requirement of willfulness. Castaneda-Gonzalez argues that the Government must prove not only that his misrepresentations were material, but also that they were willful. We agree.

■ The government may not have to prove an intent to deceive in order to establish Castaneda-Gonzalez's deportability under subsection 212(a)(19), *In re Kai Hing Hui*, 15 I & N Dec. ——, Interim Decision No. 2378 (Apr. 7, 1975), but it must at least show that he knowingly and intentionally supplied the *Labor Department with incorrect material facts when applying for his labor certification. The record now before us might support a finding that he was negligent in failing to make certain that the facts stated in the application completed by his friend were accurate, but it does not establish that Castaneda-Gonzalez's misrepresentation was either knowing or intentional. Since the question of willful-

ness was not considered in the administrative proceedings, however, we will remand this case to the Board of Immigration Appeals for further proceedings wherein the Government may introduce whatever additional evidence it so desires.

*So ordered.*