**JANG MAN CHO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 81–1216.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1981.

Decided Feb. 4, 1982.

Charles Gordon, Washington, D. C., for petitioner.

Richard M. Evans, Washington, D. C. (Lauri Steven Filppu, Margaret J. Perry, Dept. of Justice, Washington, D. C., on brief), for respondent.

Before WINTER, Chief Judge, HAYNS-WORTH, Senior Circuit Judge, and BUTZNER, Circuit Judge.

WINTER, Chief Judge:

This case comes to us on the petition of Jang Man Cho to review a final order of deportation issued by the Board of Immigration Appeals. The order, affirming the decision of an immigration judge, found Cho deportable pursuant to §§ 212(a)(14) and 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(14) and 1251(a)(1), as an alien who entered the United States for the purpose of performing labor for which the Secretary of Labor did not make the requisite certification.

Because we think that the findings of the immigration judge and the Board are deficient with respect to Cho's intent when he entered the United States, we vacate the Board's order and remand the case to it for further proceedings.

## I.

Because the facts are best understood in the light of the controlling statutes, we describe the latter first. Section 241(a)(1) of the Act empowers the Attorney General to deport any alien who was excludable at the time of his entry into the United States. Section 212(a)(14) of the Act specifies as excludable those aliens who seek to enter the United States for the purpose of performing skilled or unskilled labor unless the Secretary of Labor has determined and certified that (a) there is a shortage of workers who are qualified and willing to perform the work sought to be performed by the alien at the place in the United States where the alien seeks to work, and (b) the employment of the alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

Cho, aged 37, is a native and citizen of Korea who entered the United States on March 20, 1974. He had a certification from the Secretary of Labor authorizing his employment as an auto body repairman for the Mt. Ranier Auto Body Shop in Mt. Ranier, Maryland.

At the hearing before the immigration judge, the evidence showed that Cho, after entering the United States, traveled to Maryland where he stayed with a Korean friend. About two weeks after his arrival in Maryland, he went to the auto body shop. There he had a conversation with an unidentified male who made it clear that he was not the owner. Cho asked if any jobs were open at the auto body shop, and he was told that none was available. Cho did not ask to speak to the owner, although he had asked the unidentified male if he was the owner. The conversation was brief because Cho spoke little English and no interpreter was present. Cho left the shop and never returned or called to inquire further of the owner about a job. Cho did not meet the owner until five years later when he returned to the shop for a visit.

Cho did not seek other employment as an auto body repairman because two friends advised that he could not find a job as a mechanic or repairman until he learned to speak English well and until he had his own tools. He neither spoke English well nor owned tools.

About a month after his inquiry at the auto body repair shop, Cho obtained employment in a grocery store. Eventually he opened his own store and brought his family to the United States to join him. When he sought to be naturalized, his application generated an inquiry into the circumstances of his entry into the United States and ripened into the present proceeding.

The immigration judge, whose findings were affirmed by the Board, found that the evidence was insufficient to show that Cho reported to the employer to whom he had been certified.[1] The immigration judge therefore concluded that Cho had entered the United States in violation of § 212(a) because he came to this country without certification by the Secretary of Labor for the job as a grocery store clerk.[2]

---

1. The immigration judge discounted as "self-serving" Cho's uncontradicted testimony that he went to the auto body shop to find out about the certified job.

2. The text of the pertinent portion of the immigration judge's decision follows:

   At the offset [sic], or at the start, I would say this, that the—if I were satisfied that the respondent had made a good faith effort to go to this position and that this position was then not available or that he had been refused employment there, I would terminate these proceedings. The facts of this case, however, are that the alien alleges that he reported to the shop some two weeks after his arrival, where he spoke to a person, not otherwise identified, who did not speak Korean. There was no interpreter present and that the respondent's knowledge of the English language was to say the least very limited. He did not give the person his name and if there was, in fact, any such conversation of which I have no evidence other than the testimony of the respondent. It's quite conceivable that not having identified himself, the person to whom he spoke might have believed that the job that existed was waiting for Jany [sic] Man Cho, the respondent in these proceedings, and that the individual before him was not the respondent in these proceedings. However, this is conjecture, but I do feel that I have no other evidence other than the testimony of the respondent,

## II.

There is no doubt that Cho had a proper certification from the Secretary of Labor when he entered the United States, but it was a certification to work as an auto body shop repairman and not as a grocery clerk. The two authorities pertinent to the decision in this case are *Castaneda-Gonzalez v. I.N.S.*, 564 F.2d 417 (D.C.Cir.1977), and *Spyropoulos v. I.N.S.*, 590 F.2d 1 (1 Cir. 1978).

*Castaneda-Gonzalez* involved the deportation of an alien on the ground that the labor certificate on which he obtained entry into the United States was based on a material misrepresentation. It gave rise to two questions for decision: (a) may the Attorney General independently review the facts surrounding the issuance of a labor certificate and declare the certification of the Secretary of Labor of no effect[3] and (b) may the Attorney General deport an alien for inaccuracies in the factual basis for a labor certificate? The court answered the first question in the negative. More importantly for our purposes, it answered the second question by holding that the Attorney General may deport an alien for inaccuracies in the factual basis of a labor certificate only upon proof of a willful misrepresentation of a material fact. *See* 564 F.2d at 434.

*Spyropoulos* held that the Attorney General could deport an alien who, having a labor certificate to work as a cabinetmaker in Washington, D. C., took employment as a machinist in Massachusetts. The alien accepted the job as a machinist within a month of his entry to this country, after two unsuccessful efforts to communicate with his certified employer by mail. The rationale of the decision was that the alien (a) failed to report for certified work, (b) took another job almost immediately after arrival, (c) made only half-hearted attempts to find out about the certified job, and (d) ignored indications that there were problems with the job opening before entry.[4] The court considered that, taken together, these facts constituted substantial evidence for a finding that the alien never intended to take the job for which the certification was granted. The government places heavy reliance on *Spyropoulos* in the present case.

From *Castaneda-Gonzalez* and *Spyropoulos*, we distill the following principle: when an alien enters the United States with a labor certificate but fails to take the job for which he is certified, the Attorney General may deport him only upon proof sufficient to support a finding that he obtained the certificate by fraud (material misrepresentation) or that he did not intend to take the certified employment upon entry. Contrary to the government's apparent position, *Castaneda-Gonzalez* and *Spyropoulos* are not conflicting decisions.[5]

---

which is self-serving. The respondent never again returned to inquire. He admits that the individual to whom he spoke was not the owner of the establishment, and in fact, he made no attempt to speak to the owner until some five years later in April of 1979, when he happened to drop in on his way somewhere else and met him at that time. There is no dispute with respect to the fact to [sic] whether or not the respondent is a mechanic. The Government concedes that he is. The sole issue is: Did the respondent report to the employer as required. I am not satisfied that he did, and I will, therefore, order deportation . . . .

**3.** This issue is not present in Cho's case. Cho worked as an auto body repairman in Korea, and his qualifications to perform this work are conceded.

**4.** The alien had no firm job offer before he entered the United States from Canada. Nevertheless he was granted a visa for entry as a permanent resident. In the instant case, it is not disputed that Cho had a firm offer of employment when he entered the United States.

**5.** Admittedly, the *Spyropoulos* court read *Castaneda-Gonzalez* as holding that the Attorney General may not question the qualifications of an alien for the job which he was certified by the Secretary of Labor. *See Spyropoulos*, 590 F.2d at 3. *Castaneda-Gonzalez* goes further, however, for it expressly holds that factual errors underlying a labor certification are grounds for deportation only if they are the product of willful misrepresentation. *Castaneda-Gonzalez*, 564 F.2d at 434. The result in *Spyropoulos* is consistent with this holding because a showing that an alien entered the United States with no intention to take his certified employment raises a strong presumption that

When an alien enters this country under a labor certificate which he does not intend to use, he in effect willfully misrepresents a material fact. But if he enters with the requisite intention only to find that the certified job is no longer available, he commits no fraud and may not be deported merely for accepting other employment.

### III.

 Applied to the facts here, the principle we discern requires reversal and remand. All that was found at the administrative level was that Cho failed to report for the job for which he was certified. To deport him there must be a finding (a) that he entered the United States without the intent to take the certified job, or (b) that when he obtained the labor certificate or the visa for entry, or when he entered the United States, he fraudulently represented that he would take the certified job.

We intimate no view as to whether the record would support a finding that Cho never intended to accept the certified employment. Of course, Cho's uncontradicted testimony that he presented himself at the auto repair shop is to be weighed against the fact that he took other employment without having contacted the owner of the auto repair shop to verify that the certified job was no longer open. Unlike the alien in *Spyropoulos*, however, Cho held a firm job offer when he entered the United States, and he journeyed to the area where that job was located. On remand, Cho may come forward with additional evidence supporting the credibility of his testimony.[6]

The finding of fact in the first instance rests with the immigration judge and not with us. We simply hold that a finding regarding Cho's intent is a prerequisite to

deportation, and that the existing record contains no such finding.

VACATED AND REMANDED.

he procured the certificate by fraud, or at least that he entered the United States under false pretenses.

**6.** We add for the elucidation of the immigration judge that a witness is not to be found unbelievable *merely* because his testimony helps his cause. His interest in the outcome is a factor affecting credibility, but it is not the sole test as

the immigration judge seemed to assume. Nor must every witness be corroborated before his testimony can be accepted if he is otherwise found to be credible. In a case of this type, the reasons for finding a witness incredible should be fully stated as a prerequisite for appellate review.