**UNITED STATES of America,**
**Appellant,**

v.

**Cesare ROSSI, also known as Ricardo**
**Luis Rossi, Appellee.**

**No. 16754.**

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1962.

Laurence E. Dayton, U. S. Atty., Robert N. Ensign, Asst. U. S. Atty., San Francisco, Cal., for appellant.

Joseph L. Alioto, Walter F. Calcagno, San Francisco, Cal., for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This is an appeal by the government from an adverse judgment in a proceeding initiated in the District Court as authorized by Section 340(a) of the Immigration and Naturalization Act of 1952 [66 Stat. 260, 8 U.S.C.A. § 1451(a)] to revoke the order admitting Cesare Rossi, under the name of Ricardo Luis Rossi, to citizenship and to cancel his certificate of naturalization on the ground that the order and certificate were procured "by concealment of a material fact or by willful misrepresentation." The opinion of the District Court is reported in 171 F.Supp. 451.

The evidence is without conflict and consists of Rossi's pre-trial deposition taken by the government, his admission of facts in response to written request made upon him by the government and his testimony at the trial. It thus appears that Rossi, a native of Italy, entered the United States illegally in 1926 or 1927 but after a year or two

voluntarily departed, going first to Tacna, a town on the border between Chile and Peru, where he visited relatives. During his stay there, those two countries submitted the question of sovereignty over that region to a vote of the local citizens and Rossi was importuned, apparently by his relatives, to assume the identity of his deceased brother, Ricardo Luis Rossi, who had been born in Tacna, and participated in the plebescite. He then returned to Italy on a Chilean passport[1] and afterwards in 1929 applied for permission to enter the United States for permanent residence. Knowing that the immigration laws of the United States imposed an annual quota on Italian nationals but placed no such limitation upon the immigration of natives of South American countries, and in order to avoid the Italian quota restriction, Rossi again used the name and nationality of his brother when applying for a visa. He was issued a non-quota visa by the United States consular officer and thus gained entry into this country. Thereafter he continued to personate his brother and in 1935, after the usual proceedings, was admitted to citizenship by the United States District Court.

The District Court took the view that denaturalization was warranted only if the facts misrepresented by Rossi were essential to the validity of his entry into this country and if he intended them to deceive the Immigration officials; the court concluded that the government had failed to prove both issues and dismissed the action.

In the District Court, the essence of the government's argument was that Rossi's intentional misrepresentation and suppression of the truth in the course of the proceedings for naturalization prevented a proper investigation of his eligibility for citizenship and demonstrated a lack of good moral character, thus constituting an act of fraud justifying revocation of citizenship without regard to the effect true answers would have had on his application.[2] This reasoning accords with the rationale expressed in Del Guercio v. Pupka, 160 F.2d 799 (9th Cir., 1947) and Chaunt v. United States, 270 F.2d 179 (9th Cir., 1959). In the latter case it was held that the deliberate concealment by the immigrant of an arrest for "general breach of the peace" was alone sufficient to warrant his denaturalization, "for it is not the number of arrests, nor the character of the offenses, which is the important factor. It is the concealment of any material fact sought to be inquired into, including any arrest, which is the fraudulent act and which justifies not only the finding of fraud, but also the finding * * * that the defendant had not been of good moral character for a period of five years immediately preceding his application and thus did not meet the statutory prerequisite to citizenship." We further stated that the test of materiality was "not whether naturalization would have been refused if defendant had revealed the truth, but whether, by his false answers, the government was denied the opportunity of investigating the facts relating to his eligibility." (270 F.2d at page 183) Other circuits had expressed the same opinion. Landon v. Clarke, 239 F.2d 631 (1st Cir., 1956);

1. Tacna became part of Chile as a result of the plebescite.

2. The pertinent allegation in the government's amended petition is a charge that "3. Said order admitting respondent to citizenship and said certificate of naturalization were procured by concealment of material facts and by willful misrepresentations in that Cesare Rossi deliberately and intentionally made false statements in the proceedings leading to his naturalization, the purpose and effect of which false statements were to prevent the making of a full and proper investigation of his qualifications for citizenship, to conceal his unlawful and fraudulent entry into the United States, to conceal his lack of good moral character and lack of attachment to the principles of the Constitution, to induce the Immigration and Naturalization Service to make an unconditional recommendation to the court that his petition be granted, to preclude inquiry by the court concerning the qualifications for citizenship, and to procure naturalization in violation of law."

United States ex rel. Jankowski v. Shaughnessy, 186 F.2d 580 (2d Cir., 1950); Corrado v. United States, 227 F.2d 780 (6th Cir., 1955) cert. den. 351 U.S. 925, 76 S.Ct. 781, 100 L.Ed. 1455; United States v. Accardo, 208 F.2d 632 (3d Cir., 1953) cert. den. 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098. However, the Supreme Court reversed Chaunt [364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960)].[3] The Court roundly condemned any "temporizing with the truth" by an immigrant but did not regard such a retreat from rectitude as sufficient in itself to strip him of citizenship once granted. It stated that in addition the government must establish by " 'clear, unequivocal and convincing' evidence either (1) that facts were suppressed which, if known, would have warranted denial of citizenship or (2) that their disclosure might have been useful in an investigation possibly leading to the discovery of other facts warranting denial of citizenship." (364 U.S. 350, 355, 81 S.Ct. 147, 150)

Under Chaunt, proof of Rossi's intentional misrepresentation was not alone enough to divest him of citizenship.

On appeal, the government further argues that the facts misrepresented were material to lawful entry and that Rossi was guilty of fraudulently misrepresenting them. We have no doubt that Rossi initially personated his brother for reasons other than to gain citizenship; but he candidly conceded at this proceeding that afterwards he used his brother's identity to deceive the American consul and gain a visa.[4] Manifestly, his intention was fraudulent.

▮▮ This brings us to the question of the effect of Rossi's assumption of his brother's identity on the order granting him citizenship; naturalization is the final step in the process which begins with entry, and thus what is material in completing the process depends on what was material in initiating it. Rossi's misrepresentation, of course, dated back to the time of his application for a visa. The materiality of his misrepresentation may be determined by the bearing it had upon his right to enter this country; if permission rested upon the truth of the fact represented and he could not have secured a visa as Cesare Rossi, a native of Italy, then the fact was material—otherwise it was irrelevant. Stated another way, "a fact suppressed or misstated is not material to an alien's

---

3. This reversal, which figuratively "cut the ground" from under the government's position, post dated the trial in the District Court and, indeed, the filing of the briefs in this court.

4. "Q. Mr. Rossi, isn't it a fact that you used the name Ricardo also on your application for a visa to get into the United States?

"A. Sure.

"Q. Because you knew that you had a much better chance of getting your visa and getting into the United States if you used the name Ricardo?

"A. Certainly.

"Q. Isn't that true?

"A. That is true, sure.

"Q. And that was true because Ricardo had been born in Peru?

"A. In Peru.

"Q. And you were born in Italy?

"A. And I born in Genoa, yes, Italy.

"Q. And you knew that if you applied for your visa under the name of Cesare which was your own true, original name, and told them that you were a native-born citizen of Italy, you would have much more difficulty in getting your visa?

"A. [By Rossi] That's right; that's right, sure, that's right.

"Q. Because you knew there was a quota?

"A. There was a quota. I think at that time the quota was closed, too, if I remember well.

"Q. You would have had to await your turn to get into this quota for people from Italy to be admitted into the United States; isn't that true?

"A. Sure.

"Q. And isn't it also true that somebody told you back in Peru that your chance of getting admitted into the United States would be much better if you adopted the name Ricardo than if you continued to use your true name of Cesare?

"A. I had that suggestion made, yes, on account of having already used that name Ricardo, and the suggestion was that if I take that name, I would have more chance to get into the United States that way and I had a suggestion and I took that suggestion and I came through with that name."

entry, unless it is one which, if known, would have justified a refusal to issue the visa." United States ex rel. Fink v. Reimer, 96 F.2d 217 (2d Cir., 1938). The distinction is well illustrated by comparing the facts in the Fink case with those revealed in United States ex rel. Leibowitz v. Schlotfeldt, 94 F.2d 263 (7th Cir., 1938). In both cases the principal issue was whether the visa was fraudulently procured, making it a nullity and the immigrant's entry unlawful. In Leibowitz the immigrant had employed his brother's name when applying for a visa, while in Fink the immigrant (Fink) had personated one Apfelroth. In Leibowitz the court held the misrepresentation immaterial and the entry lawful because the immigrant was eligible for entry and could have secured a visa in his own name as readily as he did in the guise of his brother; but in Fink the court reached an opposite conclusion because "In any case the fraud [t]here was essential to success; Apfelroth could get a preference visa, Fink could not; * * *."

There is no suggestion in this record that Rossi was ineligible for a quota visa, nor did the government attempt to prove Rossi was an undesirable alien subject to exclusion; but the government urges that the entire quota for Italian nationals was oversubscribed so that, but for the misrepresentation, Rossi could not have secured permission to enter.

The government's evidentiary burden in denaturalization is a heavy one.

In Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943), where the issue was whether the citizen had illegally secured his certificate of naturalization, the court stated that citizenship "once conferred should not be taken away without the clearest sort of justification and proof. So, whatever may be the rule in a naturalization proceeding (see United States v. Manzi, 276 U.S. 463, 467, 48 S.Ct. 328, 329, 72 L.Ed. 654), in an action instituted under § 15 for the purpose of depriving one of the precious right of citizenship previously conferred, we believe that the facts and the law should be construed as far as is reasonably possible in favor of the citizen. * * * For reasons presently to be stated, this burden must be met with evidence of a clear and convincing character * *." [5] And in Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147 (1960), a denaturalization proceeding predicated upon the immigrant's alleged fraud, it was held that the same test must be applied to evidence relating to the issue of materiality.

The District Court in the instant case held "[t]hat the Petitioner [the government] has failed to establish by the quality of proof necessary in a proceeding of this kind that the Respondent was guilty of any fraud or illegality which caused or contributed to the granting of his certificate of citizenship."

The entire evidence touching on the condition of the Italian quota consists of a brief passage appearing in Rossi's pretrial deposition.[6] While being questioned about other matters, Rossi, as an aside, volunteered that he thought the quota was closed in 1929 when he secured his visa. No inquiry on that subject was made of him, nor was other proof adduced.[7] Rossi's observation, considered in context, suggests more that he

---

5. Section 15 of the Immigration Act then in force is the counterpart of 8 U.S. C.A. § 1451(a) here involved.

6. See Footnote 4 supra.

7. After the District Court had rendered its memorandum opinion the government, apparently under the authority of Rule 59 F.R.Civ.P., 28 U.S.C.A., filed a "Motion for Reconsideration" and for judgment. This motion might be construed, in part, as one for a new trial for newly discovered evidence relating to the Italian quota in 1929. However, the government having failed to specify as error the denial of this motion, the question whether the trial court should have entertained this evidence is not before us. We do note, however, that the motion contains nothing to excuse the government's failure to tender the proposed proof during the trial.

was rendering an opinion rather than stating a fact; but even as a statement of fact it is so qualified as to be of little probative value. We cannot say that this lone statement on this vital issue meets the evidentiary test required by Chaunt.

The judgment is affirmed.