**Shamaya Daoud KASSAB, Petitioner,**
**v.**
**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**
**No. 16529.**

United States Court of Appeals
Sixth Circuit.
Aug. 19, 1966.

Harry Kobel, Detroit, Mich., Rosin & Kobel, Detroit, Mich., on brief, for petitioner.

Paul Arthur Nejelski, Dept. of Justice, Washington, D. C., Joseph P. Kinneary, U. S. Atty., Charles G. Heyd, Asst. U. S. Atty., Cincinnati, Ohio, on brief; Maurice A. Roberts, Atty., Dept. of Justice, Washington, D. C., of counsel, for respondent.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

Shamaya Daoud Kassab petitions this Court for review of a deportation order issued by the Immigration and Naturalization Service. A native and citizen of Iraq petitioner entered the United States as a student on February 5, 1952. Some five years later on April 25, 1957, he married one Angea Pascarella, a lawful resident alien of the United States. By virtue of this marriage, petitioner was ultimately admitted to permanent residence as a non quota immigrant.

In his application for a visa, made in Windsor, Ontario, on October 21, 1957, petitioner stated that his last permanent residence was at 303 North Cavalry, Detroit 9, Michigan, that his address in the United States was the same, and that he was "destined to" his wife, Angea Kassab, at the same address. It would be fair to construe the foregoing as petitioner's representation that the address to which he was then "destined" was that of himself and his wife. At that time, however, petitioner's wife, who was seventeen at the time of the marriage and who had never taken up residence with petitioner, had on June 13, 1957, filed a petition to have the marriage annulled. Petitioner filed his answer to the annulment petition on September 12, 1957, but it was granted on November 25, 1957.

In 1963, when petitioner sought naturalization, this information was given to the Naturalization Examiner, and on January 21, 1964, a Show Cause Order and Notice of Hearing were issued as part of a deportation proceeding. The grounds therefor were that petitioner's initial application for a visa, by stating only that he was destined to his wife, without further explanation, had constituted a fraudulent concealment of material facts, rendering petitioner deportable under 8 U.S.C. § 1251(a) (1) and § 1182(a) (19). Petitioner testified that when he made application for a visa he was hopeful that his wife's annulment proceeding would be withdrawn or defeated; that his wife had on occasions come over to his apartment and done the housekeeping, and that he felt that he was in good faith in leaving the impression that he was a married man, living with his wife.

There was testimony at the hearing that a full disclosure of the existence of the annulment proceedings would have resulted in the visa application being held in abeyance pending the outcome of the court action, with the possibility of a visa not being granted if the annulment were granted.

Petitioner testified that he had been continually within the United States since October 21, 1957, except for two or three brief visits to Ontario, none lasting longer than three hours. He also testified that his deportation would result in hardship to him, since he would be forced to dispose of two food markets valued at about $50,000 and would be placed in a position where it would be difficult for him to fulfill the moral obligation he felt to contribute to the support of his sister and sister-in-law in the United States, and his parents in Iraq.[1] Petitioner also admitted to two occasions of adultery in 1957 and 1958.

The Special Inquiry Officer found that petitioner was subject to deportation since he had procured a visa by "fraud and wilful misrepresentation of a material fact." It was not necessary to this finding that it be shown that petitioner *would not* have procured his visa if the true facts had been known. It is sufficient that if the fact of the annulment proceeding had been revealed, it *might* have led to further action and the discovery of facts which would have justified the refusal of the visa. Langhammer v. Hamilton, 295 F.2d 642, 647–648 (C.A.1, 1961); Ganduxe y Marino v. Murff, 183 F.Supp. 565, 567 (S.D.N.Y. 1959) aff'd sub nom, Ganduxe y Marino v. Esperdy, 278 F.2d 330 (C.A.2, 1960); see also, Corrado v. United States, 227 F.2d 780, 784 (C.A.6, 1955) cert. den. 351 U.S. 925, 76 S.Ct. 781, 100 L.Ed. 1455; Chaunt v. United States, 364 U.S. 350, 355, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960). Under this rule, we can find no error in the holding of the Special Inquiry Officer that petitioner was deportable.

The officer went on to exercise his discretion by refusing to approve petition-

---

1. Out of his yearly income of about $16,-000, petitioner contributed to the upkeep of his sister's household where he had lived, and where he continued to eat his meals, and also gave $25–$55 a week to his sister-in-law. Both of these women were married, and their husbands employed. Petitioner also sent from $1,000–$1,500 a year to his parents.

er's application under 8 U.S.C. § 1254(a) (1) for suspension of deportation because of hardship. This latter ruling was based on the ground that petitioner met none of the statutory requirements. First, that he had not made out a case of the degree of hardship contemplated by the statute; second, that his admitted trips to Canada interrupted the required seven years continual presence; and, third, that his admitted adultery prohibited a finding of good moral character.

Since we cannot say that the Inquiry Officer's finding that Kassab had not made out a case of hardship was an abuse of discretion, we need not consider petitioner's argument that the officer failed to apply the proper legal criteria in passing on the second and third requirements.

The order of the Board is affirmed.