21 F.3d 1112
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mario Batacan CRESPO; Maria Einez P. Crespo; Claire Marie
Crespo; Virgilio Amadeo Crespo; Menachem John
Crespo; Joselito P. Crespo; Marcel
Louis Pansacola Crespo, Petitioners,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-70710.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 9, 1994.
Decided April 5, 1994.
 
 1
 Before: ALARCON and FERNANDEZ, Circuit Judges, and WILSON, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Mario Batacan Crespo seeks review of the Board of Immigration Appeals' (BIA) dismissal of his appeal of the Immigration Judge's (IJ) decision denying asylum, withholding of deportation, and voluntary departure. Crespo also seeks review of the BIA's denial of his motion to reopen the deportation proceedings.
 
 
 4
 Crespo contends that the BIA erred in denying his motion to set aside his attorney's concession of deportability and to reopen the deportation hearing, and to remand for a de novo evidentiary hearing. He argues that his attorney's conduct denied him effective assistance of counsel. Crespo asserts that his former attorney's concession of deportability, based on the misrepresentation of his true identity in procuring a visitor's visa, deprived him of due process. Crespo also maintains that the BIA erred in denying his request for voluntary departure because it failed to consider all the equities of his case. Finally, Crespo claims that he was entitled to asylum because he met his burden of proving a well-founded fear of persecution by the National People's Army (NPA) because of his membership in a particular social group and his political opinion.
 
 
 5
 We vacate the BIA's denial of the motion to remand to set aside the concession of deportability and to reopen the deportation proceedings because we conclude that Crespo's former counsel's concession that he was deportable denied him the effective assistance of counsel. Because a de novo evidentiary hearing must be conducted to determine whether Crespo should be deported, we also vacate the deportation order and the denial of voluntary departure. The appeal of the order denying asylum and withholding of deportation is dismissed without prejudice as moot.
 
 I.
 
 6
 On December 1, 1986, the INS issued an order to show cause in which it alleged that Crespo was deportable on the basis that he was excludable at his time of entry into the United States pursuant to section 241(a)(1), 8 U.S.C. Sec. 1251(a)(1) (1982) because (1) he had procured a nonimmigrant visa by fraud or by willfully misrepresenting a material fact in violation of section 212(a)(19), 8 U.S.C. Sec. 1182(a)(19) (1982); and (2) he was not in possession of a valid nonimmigrant visa in violation of section 212(a)(26), 8 U.S.C. Sec. 1182(a)(26) (1982). At the February 18, 1987 deportation hearing, Crespo's original counsel admitted the allegations contained in the order to show cause and conceded deportability.
 
 
 7
 By this admission, Crespo's former counsel conceded that (1) Crespo entered the United States on October 25, 1986, as a nonimmigrant visitor, upon the presentation of a nonimmigrant visa issued to him on May 29, 1985, at the American Embassy in Manila; (2) Crespo entered the United States for the purpose of residing and working here indefinitely; (3) the nonimmigrant visa and Philippine Islands' passport with which Crespo entered the United States on October 25, 1986 was in the name of Mark V. Jiminez; (4) Crespo's true name was not Jiminez, and a nonimmigrant visa had been not issued to him in his true identity; (5) Crespo had concealed his true identity from the American Embassy because he believed that a nonimmigrant visa would not have been issued to him if he had told the truth; and (6) Crespo "did not possess or present a valid nonimmigrant visa or passport" when he entered the United States.
 
 
 8
 After conceding deportability, Crespo's former attorney requested asylum, withholding of deportation, and voluntary departure. Following the December 17, 1987 hearing, the IJ denied Crespo's application for asylum and withholding of deportation, and his request for voluntary departure. Crespo's former counsel filed a notice of appeal on December 28, 1987. The notice of appeal was limited to the denial of asylum. Thereafter, Crespo's new counsel filed a motion to remand to set aside the concession of deportability and to reopen the deportation proceedings based on ineffective assistance of counsel. On October 14, 1992, the BIA denied Crespo's motion to reopen the deportation proceedings and affirmed the IJ's decision. This petition for review followed.
 
 II.
 
 9
 During the asylum proceedings, Crespo testified that in 1982, he had a land dispute with five of his tenants who were either NPA sympathizers or NPA members. These tenants refused to give him a 40 percent share of the proceeds of their harvest, as required by the law of the Philippine Islands. They also requested that the other tenants join their strike or leave the farm land. Crespo filed a complaint with the local military police. In response to Crespo's complaint, a violent confrontation occurred between the military police and the NPA, resulting in the death of NPA members. Crespo testified that the NPA blamed him for informing the Philippine authorities of its activities. They threatened to "get even" with him "one way or another." Crespo testified that, following this dispute, the NPA shot at his jeep and his driver, and then sped away. His brother also mysteriously disappeared in August of 1983. Crespo testified that after these incidents, he entered the United States in August of 1983[1] with a passport and a nonimmigrant visitor visa issued in his true name.
 
 
 10
 Crespo testified that in March or April of 1985, he asked the Philippine Minister of Travel and Transportation for advice about his problems with the NPA. The Minister told him to obtain a visa and passport under a different name. Subsequently, the Minister of Travel and Transportation provided him with a passport and visa in the name of Mark V. Jiminez.
 
 
 11
 After he entered the United States, Crespo obtained a social security card under the name of Mark V. Jiminez. Throughout 1985 and 1986, Crespo travelled back and forth between the Philippines and the United States.
 
 
 12
 Crespo admitted that when he reentered the United States following his trips to the Philippines in 1985 and 1986, he always represented to the immigration official that he planned to stay a few months, but he in fact intended to stay permanently in the United States. Crespo acknowledged that, after procurement of the Jiminez visa and passport, he always presented these documents to immigration officials upon re-entry into the United States. The IJ asked Crespo why he could not use the Crespo documents upon re-entering the United States if he felt safe in the United States. Crespo answered, "because of [sic] your ticket is attached to the passport I assume."
 
 III.
 
 13
 Crespo contends that the BIA abused its discretion in denying his motion to reopen his deportation hearing and set aside the concession of deportability. He argues that he was denied due process of law because he did not receive the effective assistance of counsel. He further asserts that his counsel's concession of fraud was prejudicial to his ability to demonstrate that he should not be deported. The BIA's denial of a petition seeking reopening of deportation proceedings is reviewed for abuse of discretion. Magallanes-Damian v. INS, 783 F.2d 931, 933 (9th Cir.1986). We review de novo a claim of ineffective assistance of counsel. Mohsseni Behbahani v. INS, 796 F.2d 249, 251 (9th Cir.1986) (citing Doyle v. United States, 721 F.2d 1195, 1198-99 (9th Cir.1983)). In order to prevail on an ineffectiveness of counsel claim, the alien must show that he was prejudiced by his counsel's performance. Ramirez-Durazo v. INS, 794 F.2d 491, 499-501 (9th Cir.1986); Mohsseni Behbahani v. INS, 796 F.2d at 251.
 
 
 14
 If Crespo was not guilty of making a false representation of a material fact on the date he procured the nonimmigrant visa in the name of Mark Jiminez, his attorney's concession was prejudicial to his defense to the allegations in the order to show cause. The IJ ordered his deportation based on the alleged fraudulent misrepresentation. The BIA dismissed the motion to reopen on the assumption that the alleged fraudulent representation was material and that counsel's concession was triggered by his conclusion that he could not prove that it was not material. The BIA also dismissed Crespo's appeal of the denial of his request for voluntary departure based on its finding of fraudulent misrepresentation. Prejudice is further demonstrated by the fact that as a result of his attorney's concession of deportability, Crespo is barred from admission to the United States, unless he obtains a waiver. Matter of Shirdel, 19 I & N Dec. 33, 34 (BIA 1984).
 
 
 15
 Crespo argues that there was no tactical advantage to conceding deportability based on fraud, because his misrepresentations concerning his true identity in procuring a visa were not material under the test set forth in Matter of S--and B--C--, 9 I & N Dec. 436, 447 (BIA 1960; AG 1961). Crespo also contends that, at the time of his October 1986 entry, he was in possession of a valid nonimmigrant visa, issued in his true name.
 
 
 16
 The BIA did not hold an evidentiary hearing regarding the merits of the motion to reopen to determine whether Crespo's former counsel's decision to concede deportability was the result of ineffective representation of counsel. Nevertheless, in denying the motion, the BIA speculated that counsel's concession of deportability was a tactical decision, and not the result of ineffective assistance of counsel. The BIA reasoned that Crespo's former counsel made the concession because she was aware that she could not refute the fact that Crespo had misrepresented his identity.
 
 
 17
 The BIA also opined that Crespo's former counsel "could have had sound reason to believe that he had obtained a nonimmigrant visa by misrepresenting a material fact, i.e., his identity, and that he was not in possession of a proper nonimmigrant visa when he entered this country." Since Crespo's former counsel knew that the INS "probably could establish deportability," the BIA reasoned that "she might have decided that it would be tactically advantageous to concede this point since her client's main hope rested on discretionary relief from deportation."
 
 
 18
 Crespo maintains that the BIA's conclusion that the INS probably could establish deportability by proving that the misrepresentation was material is not supported by substantial evidence. Crespo asserts that the testimony he presented in the proceedings before the IJ established that he had obtained the Jiminez visa through an official of the Philippine Islands for the sole purpose of protecting himself from discovery by the NPA. The record reflects that the IJ found credible Crespo's testimony concerning his motive for misrepresenting his true identity.
 
 
 19
 Crespo argues that the INS could not have proven that the misrepresentation of his identity was material by clear and convincing evidence. See Woodby v. INS, 385 U.S. 276, 286 (1966) ("[N]o deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true."). In Matter of S--and B--C--9 I & N Dec. at 447, the Attorney General held that a misrepresentation, including one as to identity, made in connection with an application for a visa, or at the time of entry into the United States, is material if (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might have resulted in a determination of exclusion. This test of materiality has been applied to deportation proceedings, La Madrid-Peraza v. INS, 492 F.2d 1297, 1298 & n. 2 (1974), and denaturalization proceedings. United States v. Rossi, 299 F.2d 650, 652-53 (9th Cir.1962).
 
 
 20
 The BIA found that Crespo's misrepresentation of his identity was material under Matter of S--and B--C-- because it speculated that he may have obtained the fraudulent nonimmigrant visa because the visa he obtained in his own name had been cancelled prior to his entry in October of 1986. The BIA explained this conjecture in the following words:
 
 
 21
 Although we do not know precisely when or why embassy officials cancelled [Crespo's] "legitimate" nonimmigrant visa, they may well have done so prior to his October 1986 entry into this country because of the situation with his children. In particular, the fact that his children were in the United States as overstays would raise questions as to his nonimmigrant intent. In fact, at the hearing below, [Crespo] acknowledged that he intended to remain permanently in the United States.
 
 
 22
 The BIA apparently concluded that the reason for Crespo's misrepresentation was due to the necessity to cut off any inquiry about the legality of his status as a visitor to the United States in the view of the alleged overstays of his children. The record shows, however, that Crespo's children were not "overstays" on May 29, 1985, the date he procured the visa using the name Mark V. Jiminez. Crespo's children lawfully entered the United States on May 29, 1985. Their visas were valid until November 23, 1985. The fact that Crespo's children may have been "overstays" after November 23, 1985, does not support the BIA's finding that Crespo procured the Jiminez visa on May 29, 1985 for the purpose of misrepresenting his intent to enter the United States as a mere visitor. The present record does not demonstrate that at the time that Crespo procured the Jiminez visa, the misrepresentation of his identity tended to shut off a line of inquiry concerning his status or that of his children. Matter of S--and B--C--, 9 I & N. Dec. at 447.
 
 
 23
 Crespo also challenges the BIA's finding that his former counsel conceded deportability as a tactical matter because Crespo did not did not possess a valid nonimmigrant visa at the time of his 1986 entry. In its discussion of the reasons for denying the motion to reopen, the BIA noted that the nonimmigrant visa issued in September of 1986 in Crespo's true name contained the marking "cancelled." From this fact, the BIA speculated that the visa may have been cancelled prior to his entry into the United States on October 25, 1986, because his children remained in the United States after the time for departure had expired.
 
 
 24
 The record shows that Crespo obtained a passport in his true name on February 20, 1985. It was valid until February 19, 1989. The present record does not disclose the date it was cancelled. At the hearing on Crespo's requests for asylum and voluntary departure, counsel for the INS conceded that the Crespo passport contained "an indefinite B1, B2 non-immigrant visa ... [w]hich, of course, was then cancelled and there's a notation that he is in deportation proceedings." The passport issued in the name of Mark V. Jiminez was valid until May 8, 1989. At the hearing, counsel for the INS acknowledged that this passport was also "valid indefinitely." Id. It is unclear from the record whether Crespo did not possess a valid nonimmigrant visa issued in his true name when he entered the United States in October of 1986. The BIA's finding that Crespo's misrepresentation of his identity was material in obtaining the Jiminez visa is not supported by substantial evidence. Therefore, its conclusion that Crespo's attorney's representation was not ineffective finds no support in the record. In light of Crespo's testimony, found credible by the IJ, that his motive in obtaining a visa in the name of Mark V. Jiminez was to escape persecution of the NPA, we are persuaded that the BIA abused its discretion in denying the motion to reopen.
 
 IV.
 
 25
 Crespo further contends that the BIA abused its discretion in denying him voluntary departure because it failed to give proper consideration to all the substantial equities in the record and relied instead, on his former attorney's concession that the evidence was sufficient to justify deportation because the misrepresentation in procuring the Jiminez visa was material. As discussed above, the present record does not support a finding that the misrepresentation was material. Thus, it was an abuse of discretion to deny voluntary departure based on the present record.
 
 
 26
 The order denying the motion to reopen the deportation proceeding is VACATED. The BIA is directed to REMAND this matter to the IJ for an evidentiary hearing.[2] Because the effect of our holding is to vacate the deportation order, the appeal of the order denying asylum and withholding of deportation is DISMISSED without prejudice as moot.
 
 
 
 *
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The record is not clear as to when Crespo first entered the United States in 1983. In one portion of his testimony, he stated that he had been in the United States "permanently" from June of 1983 to April of 1985
 
 
 [2]
 In vacating the denial of the motion to reopen the deportation proceedings and the deportation order, we express no opinion as to whether the INS can prove that Crespo is deportable or if he can demonstrate a well-founded fear of persecution, or that deportation should be withheld because there is a probability that he will be persecuted